[698 NYS2d 852]

DANNY BRITT, Respondent, v STATE OF NEW YORK, Appellant.
(Claim No. 95248.)

First Department, November 16, 1999

## APPEARANCES OF COUNSEL

*Vida M. Alvy* of counsel, Poughkeepsie (*Michael E. Timm* and *Alvy & Jacobson,* attorneys), for respondent.

*Frank K. Walsh* of counsel, Albany (*Peter G. Crary* on the brief; *Eliot Spitzer, Attorney General,* attorney), for appellant. ·

## OPINION OF THE COURT

RUBIN, J.

The State of New York appeals from an order, *inter alia,* denying its motion for summary judgment dismissing the claim against it on the ground that claimant fails to meet the statutory criteria to maintain an action for wrongful conviction. Upon review of the record in this case, I find the evidence insufficient to support the proposition, advanced by claimant, that he was coerced by the trial court into entering a plea of guilty to the charge of attempted rape in the first degree. While there is evidence indicating that claimant's assigned counsel had difficulty communicating with his client, the record reflects that the difficulty resulted from claimant's vacillation and duplicity, not from counsel's unwillingness or inability to represent his client's interests. In any event, ineffective assistance of counsel is not a predicate for a claim under the Unjust Conviction and Imprisonment Act (Court of Claims Act § 8-b; *see, Coakley v State of New York,* 225 AD2d 477, 478). Furthermore, suit is barred where the conviction was brought about by the claimant's chosen strategy. Therefore, I conclude that claimant has failed to fulfill the statutory prerequisites to prosecution of this claim.

To maintain an action for unjust conviction against the State within the ambit of Court of Claims Act § 8-b (3) (b) (ii), "claimant must establish by documentary evidence that * * * his judgment of conviction was reversed or vacated, and the accusatory instrument dismissed" on one of the grounds stated in CPL 440.10 (1) (a), (b), (c), (e) or (g). As pertinent to the facts of this case, claimant must show that: "(b) The judgment was

procured by duress, misrepresentation or fraud on the part of the court or a prosecutor or a person acting for or in behalf of a court or a prosecutor" (CPL 440.10 [1] [b]). As he alleges no prosecutorial misconduct, in order to proceed, claimant must demonstrate that the court employed "duress, misrepresentation or fraud" in obtaining his plea of guilty to the reduced charge. The statutory pleading requirements are explicit: "The claim shall state facts in sufficient detail to permit the court to find that claimant is likely to succeed at trial in proving that (a) he did not commit any of the acts charged in the accusatory instrument or his acts or omissions charged in the accusatory instrument did not constitute a felony or misdemeanor against the state, and (b) he did not by his own conduct cause or bring about his conviction. The claim shall be verified by the claimant. If the court finds after reading the claim that claimant is not likely to succeed at trial, it shall dismiss the claim, either on its own motion or on the motion of the state." (Court of Claims Act § 8-b [4].) Thus, if it appears that the claimant will not be able either to establish his innocence or to demonstrate that conviction was not the result of "his own conduct", the claim must be dismissed.

The documentary evidence submitted in connection with the claim includes the record of the proceedings in the criminal prosecution underlying this action, conducted in Supreme Court, New York County. Claimant entered a plea of guilty to the reduced charge of attempted rape in the first degree in satisfaction of indictment number 8209-90, charging him with rape in the first degree, sodomy in the first degree and sexual abuse in the first degree. On March 26, 1991, three weeks after it was entered, claimant moved to vacate his plea on the ground that it "was involuntary and was taken only because of the enormous pressure put upon me by former legal aid counsel and his supervisor from the legal aid society." The supporting affidavit further alleges that, from the outset, claimant had told his Legal Aid attorney, "I did not want to hear from him about taken [sic] a plea, that I believed my innocence could and would be proven in court." Claimant describes the performance of his attorneys as "coer[c]ive and also ineffective," and asserts that counsel should have withdrawn from claimant's defense. Significantly, the affidavit makes no mention of any coercion on the part of the court.

Mr. Britt's portrayal of events in general, and particularly those surrounding the entry of his guilty plea, is distorted and self-serving. An examination of the circumstances culminating

in the motion to vacate his plea demonstrates that claimant's allegations of coercion, ineffective representation and unfair surprise are contradicted by the record.

On January 14, 1991, defense counsel was asked why he had arrived late. Counsel stated to the court that he "was in the pens with the defendant [claimant] a good part of the morning along with the Legal Aid supervisor." Asked if his client was considering a guilty plea, counsel stated that "[t]here was an offer that had been made earlier of a D [felony] and three to six," to which the Assistant District Attorney in attendance responded, "That was made back in July." Counsel then stated that the prosecutor "told me this morning he could have it if it was before hearings and trial started." Informed that the defendant "wants to think it over at least overnight," the court put the matter over to the following day, January 15, 1991, stating, "You'll let me know whether he's going to take it or not." The record does not contain the minutes of any proceedings conducted on the stated adjourned date. However, on January 18, the record reflects that claimant was "considering the plea of three to six." On February 4, 1991, the attorney who appeared for the Legal Aid Society to report that defense counsel was "currently engaged" stated, "I know there was an offer in this case but there's no possibility of a disposition."

On Monday, March 4, 1991, claimant was produced for hearing and trial. In answer to the People's declaration of readiness, claimant's first words were "I'm not ready yet." In response to defense counsel's statement that he would be ready for trial in two days, claimant said, "No we will not. You just told me I—you didn't want to go to trial." Counsel then stated, "I will be ready to try this case Wednesday." Following more accusations by claimant that his attorney "doesn't seem to want to take this case to trial," the court asked, "You definitely want to go to trial, is that it?", to which claimant answered, "Yes. But I'm not ready to go to trial," alleging an inability to contact a brother in Virginia who was to locate character witnesses. Acceding to claimant's request for "a little longer adjournment," the matter was set down for trial on Wednesday, March 6.

Proceedings on March 6 began with counsel's announcement that the "defendant has an application to have me relieved from the case." Asked to make his application, the following colloquy ensued.

"THE DEFENDANT: Your Honor, if the D.A. [d]oesn't want to stand by the original offer of three to six, which was there, I'm

thinking considerably about making an application because then the case has to go to trial and [defense counsel] doesn't—he doesn't feel he can try this case, he completely told me that.

"[DEFENSE COUNSEL]: That's not true at all. Your Honor, I didn't say I couldn't try the case, I'm prepared to try the case. He said I didn't want to.

"THE COURT: Sir, I have been here almost two hours now, I haven't done anything waiting for these things to come to pass. These are your choices, I'll explain your choices.

"THE DEFENDANT: Thank you. * * *

"THE COURT: You are facing very serious time.

"THE DEFENDANT: I realize that, your Honor.

"THE COURT: We're talking about a maximum of twenty-five years in jail if you are convicted on the outside. On the inside, you're talking about six years as a minimum. All right?

"[DEFENSE COUNSEL]: I have told him, for the record, that he faces a minimum after conviction of six to twelve with a maximum of twelve and a half to twenty-five.

"THE COURT: Maximum of twelve and a half to twenty-five. In a case such as this, if the woman has to come to court to testify in a very sensitive matter, I take that into consideration when I sentence somebody.

"THE DEFENDANT: Yes, your Honor.

"THE COURT: That will not inure to your favor. The D.A. is offering you today, if you should plead guilty, to go down to the next count or the lower count and get four to eight years, which is the minimum you will be allowed to plead to the felony charge. If you want to do that, you do it now. If not, I have to proceed. We have a hearing—

"THE DEFENDANT: No disrespect to you, your Honor, and your court. Your Honor, the three to six was there, I don't feel—I feel—

"THE COURT: The three to six was there—

"THE DEFENDANT: I feel there is undue pressure to up it to four to eight at this time when it was my understanding—you know, we really never communicated because I thought the thing was going to trial.

"THE COURT: All right, if you thought it would go to trial, apparently that was your intention. You can still fulfill that intention. You should have known at that time that going to trial, the minimum you are facing would be six to twelve, the

maximum twelve and a half to twenty-five. With your record, I am telling you right now you would not be getting closer to the minimum, but closer to the maximum. In a case, as I said, like this where a woman has to testify, that's very important.

"[DEFENSE COUNSEL]: I have to advise the defendant at this point not to say anything else for the record.

"THE COURT: The final point is either you accept the offer and plead guilty or we move right now to the hearing and then we go to trial. We have a jury available. I cannot postpone it any further.

"[DEFENSE COUNSEL]: I will be his attorney I gather?

"THE COURT: I'm not going to give you another attorney because you haven't articulated another reason to substitute your attorney—any legitimate reason. I'm just going to give you a minute and then I'm going to start the hearing."

At this juncture, claimant conferred with defense counsel, following which he entered a plea of guilty.

As noted, claimant's ensuing motion to vacate his guilty plea was grounded on the pressure alleged to have been applied by his Legal Aid lawyers, not by the court. Similarly, in its order ultimately vacating the plea, Supreme Court determined that "counsel's reluctance, dereliction's [sic], or incompetence made his client unfit to properly and fairly consider the plea offered, or consider it from a fair and sound position." The Court of Claims, however, selectively quoting from the colloquy set forth above, concluded that "claimant satisfies paragraph (b) of § 440.10.1 of the Criminal Procedure Law for the purposes of § 8-b of the Court of Claims Act." In other words, the Court of Claims found that Supreme Court's remarks constitute "duress, misrepresentation or fraud on the part of the court" (CPL 440.10 [1] [b]).

For purposes of this action against the State, claimant alleges that the original offer of 3 to 6 years in exchange for a guilty plea to a reduced count was withdrawn at the last minute; that he was unfairly surprised by the new offer of 4 to 8 years; that he had insufficient time to consider the plea; that it was always his intent to proceed to trial; that his waiver of the right to trial was ineffective because he was not aided by effective counsel upon entering his plea; and that his freedom of choice was overcome by the court's threat to impose a sentence near to the maximum should he be convicted after trial. However, the record of the proceedings before Supreme Court does not support claimant's account.

As of March 6, 1991, the adjourned date for trial, claimant had been contemplating the entry of a guilty plea in exchange for a sentence of 3 to 6 years since July of 1990, a period of some eight months. His first remark that "the D.A. [d]oesn't want to stand by the original offer of three to six" confirms as much. Moreover, claimant's strenuous objection in response to the revocation of that offer is completely at odds with the representation made in his moving affidavit, in which claimant alleges telling counsel "I did not want to hear from him about taken [*sic*] a plea." The argument now advanced by claimant— that he was unfairly surprised by the withdrawal of the People's original offer—is inconsistent with the representation, made upon entry of the plea, that "we really never communicated because I thought the thing was going to trial." It is also contradicted by claimant's insistence, in his brief, that he "consistently maintained his innocence of the charges and sought to be tried by a jury."

Logically, if it had been claimant's steadfast intention to proceed to trial, the proffered sentence—whether 3 to 6 years or 4 to 8 years—should have made no difference. In any event, a court does not apply duress by requiring that a defendant elect between proceeding to trial and entering a plea of guilty to whatever reduced charge (and concomitant sentence) is offered by the People, especially when the defendant has been afforded ample opportunity to consider his alternatives. At a minimum, this includes the adjournment from March 4, the date originally set for hearing and trial, and two hours on March 6, the date the plea was entered. Claimant's subsequent representation, at sentence, that "I got one minute to make a decision" is a gross distortion of the record.

Relying on the authority of this Court's decision in *People v Sung Min* (249 AD2d 130), the Court of Claims found Supreme Court's recital of the potential sentence defendant faced upon conviction to be coercive. In *Sung Min* (*supra*, at 132), we stated that "a court wrongly burdens the defendant's exercise of his right to trial when it indicates he will receive the maximum sentence, or maximum consecutive sentences, after trial, but a significantly lighter sentence after a plea." The circumstances of the instant matter, however, are readily distinguishable. Here, Supreme Court neither misrepresented the potential sentencing alternatives available to it nor threatened to impose the maximum sentence if claimant proceeded to trial. Supreme Court merely advised claimant that, *in view of his four prior felony convictions*, he "would not be getting closer to

the minimum, but closer to the maximum." The Court of Claims' conclusion also overlooks authority that it is not coercive for a court to remark that "if the defendant were to be convicted after trial, it would impose a sentence close to the maximum allowable under the law" (*People v Green*, 240 AD2d 513, 514, *lv denied* 90 NY2d 940 [citing *People v Jones*, 232 AD2d 505, *lv denied* 89 NY2d 1095]; *People v Cornelio*, 227 AD2d 248, *lv denied* 88 NY2d 982 [court "would not hesitate" to impose 100-year sentence]). Obviously, as we have noted, a court does not exert undue pressure upon a defendant merely by imparting a reasonable assessment of his sentencing prospects should he be convicted of the offenses charged in the indictment (*People v Stephens*, 188 AD2d 345, 346, *lv denied* 81 NY2d 893 [citing *People v Crafton*, 159 AD2d 271, 272, *lv denied* 76 NY2d 733]).

Claimant's reliance on *People v Sung Min (supra)* is misplaced. Unlike the defendant in that case, claimant is far from a first-time offender; nor did Supreme Court pursue an arbitrary " 'policy' " of imposing a sentence toward " 'the high end of the sentencing chart' " solely due to the type of offense committed (*People v Wilson*, 245 AD2d 161, 162, *lv denied* 91 NY2d 946). Concededly, in this case, Supreme Court did indicate that it would take into consideration the trauma the rape victim might experience as a consequence of having to appear and give testimony. However, claimant nowhere asserts that this is an improper consideration for a court in determining sentence.

The Court of Claims' last basis for finding the guilty plea to have been coerced is based upon Supreme Court's refusal to grant claimant's motion to relieve defense counsel. While the Court of Claims made only a brief reference to the hearing held by Supreme Court on this motion, claimant now advances the proposition that allowing him to enter a plea without substitution of counsel was coercive because counsel's representation was ineffective. This is a patent attempt to avoid the statutory preclusion of a claim predicated on ineffective assistance of counsel. Moreover, the admissible evidence contained in the record before this Court that defense counsel was less than effective comes chiefly from claimant himself.

Even if this claim were not barred by statute, claimant would be hard pressed to consign blame for the entry of his guilty plea on the ineffectiveness of his attorney. The merit of any asserted shortcomings of counsel notwithstanding, claimant has simply failed to demonstrate that he possessed a viable defense

to put forward at trial. In his affidavit in support of the motion to vacate the plea, claimant does not deny sexual contact with the complainant; he maintains only that intercourse was consensual.

There are no corroborating witnesses to the encounter between claimant and the complainant, and his recitation of events is devoid of substance. In the course of a hearing held on July 23, 1991, claimant implied that a roommate was present in the apartment, "Not while she took me in the bedroom. But the roommate was there earlier." Also, according to claimant: "while I'm sitting in the livingroom on the couch, somebody came to the house and this is—I didn't see who it was—but it was a male, your Honor, and I know this sounds crazy and asked to take a shower and her roommate was there, too, at the same time. This other woman was there. I'm sitting on the couch talking to her so I didn't pay no attention and they did and left. I to this day, I don't know who it was. I swear to you, your Honor, I don't know who this individual was. I'm trying to show your Honor this is what occurred while I was at this apartment. I did not—this woman invited me into her bedroom. I did not force this woman at all, your Honor."

The only potential witnesses to the encounter, consensual or otherwise, were claimant and the complainant. In the absence of medical evidence, the determination of claimant's guilt or innocence by a jury reduces to a matter of his credibility vis-à-vis that of the complaining witness. *Sandoval* considerations (*People v Sandoval*, 34 NY2d 371) suggest strongly that, as a defendant with four prior felony convictions, claimant would not be giving testimony on his own behalf. Therefore, had this case gone to trial, it would have been defense counsel's unenviable task to attempt to undermine the credibility of the complaining witness on cross-examination. In the event claimant had been willing to take the stand, it is doubtful that he would have been able to impress the jury with his veracity. The simple issue of how long claimant lived in the neighborhood where the alleged rape took place and where both he and the complaining witness resided is illustrative. At a hearing held December 9, 1991, claimant's newly appointed attorney represented that his client had "lived in the neighborhood 41 years." However, at a hearing conducted July 23, 1991, claimant stated, variously, "I've been raised in this neighborhood" and, in response to a direct question from the attorney, "I have lived in that neighborhood about 16 years."

Contrary to the portrayal in his brief of a confused and intimidated victim of coercion, the record reveals claimant to

be both calculating and manipulative. At the hearing on claimant's application to relieve his attorney and vacate his plea, held March 26, 1991, defense counsel arrived late for the afternoon session. While awaiting counsel's appearance, the court asked claimant, "Did you have a chance to speak to your lawyer this afternoon?" Claimant responded, "The lawyer came down there. That lawyer is not my lawyer." The court stated that it had directed defense counsel to consult with his client and repeated the· question, "Did he speak to you?", to which claimant responded, "We didn't communicate at all. No, we did not communicate." The court then made several more attempts to elicit a forthright answer from claimant, without success.

Throughout the proceedings, claimant insisted upon reading aloud his application to vacate the plea, even while the Trial Justice was trying to speak and despite the court's avowed willingness to accept his supporting affidavit into evidence. After instructing the court reporter not to listen to claimant, Supreme Court stated, "Okay. If you listen, I'll probably grant what you want. You act like a jerk." The Court of Claims found this remark to be a further indication of duress. But while claimant's acts might have been more judiciously characterized as obstreperous, claimant's conduct was, by any appellation, contumacious. The court's exasperation with an evasive and disruptive defendant is understandable, and its expression of impatience is hardly tantamount to coercion.

Upon arriving in the courtroom, claimant's attorney was immediately confronted with the *pro se* application to remove him as defense counsel. In response, the attorney stated: "To the extent that his application is based on some alleged lack on my part or problem between us in terms of our ability to communicate, all I can say is that I have had extensive consultation with Mr. Britt throughout the pendency of the case. Not only have I met with him on numerous, numerous occasions but a supervisor of the Legal Aid Society was brought in on many occasions to consult with me about the handling of the case, to speak directly with Mr. Britt both in my presence and on his own." This is the only testimony from counsel concerning his representation of the defendant that appears in the record on appeal. When asked by the court if he had spoken with claimant, as the court directed, defense counsel responded in the affirmative. The transcript continues:

"THE COURT: He says you didn't communicate with him. What does that mean?

"[DEFENSE COUNSEL]: I don't know what it means. He indicated to me he wanted me to renew my request for an

adjournment so that he could have further opportunity to confer with me.

"THE DEFENDANT: Your Honor, excuse me, your Honor—your Honor—

"[DEFENSE COUNSEL]: As to the course he wanted to pursue at this point—

"THE DEFENDANT: I want to make an application.

"THE COURT: He is very angry, he's very angry.

"[DEFENSE COUNSEL]: Yes.

"THE COURT: Angry probably at you and the Legal Aid Society and he's to be sentenced to serious time. Do you want to withdraw from the case.

"[DEFENSE COUNSEL]: If he is going to—

"THE DEFENDANT: Ineffective in past appearance—let the record reflect I have requested in past appearances to have him withdraw. Long ago I have asked them to withdraw.

"[DEFENSE COUNSEL]: In all honesty, the interaction that you are seeing here is not untypical of the way we communicate on many occasions. Although the defendant is sometimes much calmer and much more in a listening mood and in a less interrupting mood than he is now, that varies. Obviously, if he intends to go forward on his application to withdraw his plea, I think I would have to be relieved."

There is an obvious difference between ineffectiveness of representation and failure of communication, especially where it is due to the defendant's prevarication and obstructive behavior. As this Court stated in another context: "it is the obligation of a client to cooperate with counsel in the prosecution or defense of an action. While we have always held attorneys to high standards of professional conduct, this Court will not impose a duty to overcome every foible of a client so as to ensure success at each stage of litigation. To do so would hold counsel to an impossible standard. While counsel continues to be retained in a given matter, the duty of loyalty is a two-way street. A client may not, merely by being uncooperative, evade the shortcomings of a cause of action, excuse a default, avoid the payment of legal fees or set up an unfavorable outcome as grounds for recovery in legal malpractice" (*Tortorello v Carlin*, 260 AD2d 201, 207; *see also*, *Whiting v Lacara*, 187 F3d 317 [2d Cir]). Claimant's attempt to exploit the perceived differences with his attorney to derive a monetary award from State coffers should be similarly rejected.

Whatever strategy defense counsel may or may not have formulated to defend claimant against the charge of rape,

claimant's own strategy is apparent—to delay trial as long as possible. When confronted with the commencement of hearings, claimant professed a need for time to consider the People's offer of a plea to obtain an adjournment. When no further adjournment could be obtained, he entered a plea. Immediately after pleading guilty, claimant moved to vacate the plea, now professing a long-standing and steadfast intention to establish his innocence at trial. Claimant thus elevated indecision to an art form, delaying and ultimately denying justice while stating no cognizable defense to the charge against him.

Claimant employed half-truth to great effect. In support of his effort to assign blame to counsel for entry of the guilty plea, claimant misled the court into thinking counsel had disobeyed its directive to consult with his client. Then, when the attorney revealed the true state of affairs, claimant simply disrupted the proceedings, again employing a half-truth. Claimant had made an application to relieve counsel, not "long ago" as he stated, but a mere three weeks earlier on March 6, 1991, preceded by the reference on March 4 to a "failure of communication".

The motion to vacate the plea, brought on March 26, 1991 but not decided until September 30, 1994, gave claimant his ultimate success in turning delay of the proceedings into the denial of justice. Six months after the *pro se* motion was submitted, the prosecutor filed an affidavit dated September 24, 1991, informing the court that the People had been "unsuccessful in contacting the victim and we cannot go forward without her testimony in the prosecution of this case." Noting the obvious prejudice that would inure to the prosecution from the dismissal of the indictment, the affidavit notes that, on March 6, 1991, the date scheduled for trial, "the witnesses, literally, were outside the courtroom door when defendant decided to plead guilty."

At sentencing, held on February 3, 1992, claimant was sufficiently disruptive that the court was moved to remark, "I think actually what happened is that you are attempting to have a filibuster." In denying motions to set aside the verdict and to reargue the motion to vacate the plea, Supreme Court summarized its findings: "On review of the entire record I found that there was no coercion, nevertheless, that the defendant was not coerced by his lawyer, that he was given adequate and effective representation of counsel, that [counsel] came as well as another representative of the Legal Aid Society. While there may not have been the best communication, it is clear from the

record that it is very difficult to dialogue and communicate with Mr. Britt. So if anything, I'm convinced now by virtue of the fact that Mr. Britt insists on being repetitive and refuses to follow my instructions to have him be silent, he continues to talk and disrupt me, I'm similar [sic] that kind of relationship occurred between him and his lawyer. I recall the lawyers from Legal Aid Society coming in on a number of occasions and speaking about a plea and trying to represent him the best way they could. Finally, although the District Attorney asked for much greater time for a person that's had at least 15 arrests and four felony convictions, we agreed upon a sentence of from four to eight years. I'm convinced that he did receive effective assistance of counsel. There was adequate representation. However, this defendant, for his own purposes, for the Appel[l]ate purposes, for purposes that are best known to him, he insists on not communicating either to the Court nor to his lawyer."

When the criminal case was last before this Court, we directed that a hearing be held to examine the circumstances under which claimant's guilty plea was vacated, including "the facts concerning the 'pressure' allegedly imposed upon the defendant" (200 AD2d 401, 403). What resulted was an inexplicable and almost complete reversal in Supreme Court's position. But Supreme Court's findings of undue pressure, inconsistent though they may be with its earlier assessment, are based entirely on what the court now portrayed as the railroading and ineffectiveness of defense counsel.

As Supreme Court stated before its epiphany, "The defendant is knowledgeable about the court system. He has a number of arrests and convictions. He's not a stranger to it." What is truly lamentable is that the tactics utilized by claimant—delay, distort and disrupt—have proven to be remarkably effective, not only in preventing a trial of this matter but in ultimately securing the dismissal of the indictment against him. As Supreme Court comprehended all too well, the complaining witness had no desire to testify in open court, especially after the passage of time allowed her to put the experience behind her. In the absence of any other witness, it was impossible for the People to go forward with the prosecution of the rape charge. Claimant would now extend his victory by exacting a monetary award from the State.

The affirmation in opposition to the State's motion to dismiss the claim and in support of claimant's cross motion for summary judgment asserts that his mental condition rendered in-

voluntary the entry of his plea and the waiver of the right to trial. Quoting Supreme Court's words, it contends that "his 'agitated state of mind' rendered claimant 'unfit' and precluded a knowing and voluntary waiver. Such grounds demonstrate the mental disease claimant suffered at the time of the plea proceedings, grounds enumerated under the Act pursuant to CPL § 440.10 (1) (e)." Whether claimant's entry of a guilty plea was the product of intimidation that produced an "agitated state of mind", to use Supreme Court's words, or merely the consequence of a calculated strategy by a manipulative defendant intent upon postponing trial indefinitely is central to our consideration of this appeal. Claimant does not suggest that, in weighing the sufficiency of his claim, this Court is required to draw every factual inference in his favor (*cf.*, *Arrington v New York Times Co.*, 55 NY2d 433, 442, *cert denied* 459 US 1146; *Dulberg v Mock*, 1 NY2d 54, 56). To the contrary, even at the pleading stage, the statutory standard of sufficiency of a claim for unjust conviction and imprisonment is whether the claimant can demonstrate the *likelihood* that he will be able to establish his innocence and lack of contribution to his conviction (Court of Claims Act § 8-b [4]). In any event, this Court is not required to accept claimant's rendition of events when his account is directly contradicted by the record.

Vacillation between entering a plea and proceeding to trial was a strategy claimant employed for eight months prior to pleading guilty, and it was promptly resumed only a few weeks later by his motion to vacate that plea. As claimant concedes in his brief: " 'innocence is the linchpin of the Court of Claims Act § 8-b * * * *Ferrer v. State of New York*, 136 Misc. 2d 218 (Ct. Cl. 1987), aff'd 136 AD 2d 487 (1st. Dept. 1988). The purpose of the statute was to provide a remedy for unjustly convicted, innocent persons." This Court can now add that the purpose of the statute is not to provide a windfall to a criminal defendant who is sufficiently experienced with the judicial process to exploit it to his own advantage.

Claimant has failed to meet the statutory criteria to pursue this claim for unjust conviction. First, he has not established coercion on the part of the court (Court of Claims Act § 8-b [3] [b] [ii]; CPL 440.10 [1] [b]). Second, if the People cannot establish claimant's guilt in the absence of the complaining witness, neither can claimant show that he will be able to demonstrate his innocence for purposes of satisfying the statutory prerequisite to suit (Court of Claims Act § 8-b [3] [b] [ii]; [4] [a]). Granted, the test does not require documentary evidence of in-

nocence at this preliminary stage of the proceedings (*Dozier v State of New York*, 134 AD2d 759, 761). Nevertheless, it is appropriate to dismiss suits such as this where the claimant can point to no means by which he might be able to meet the strict condition imposed for recovery of damages—that innocence be established "by clear and convincing evidence" (Court of Claims Act § 8-b [5] [c]). Contrary to claimant's contention, the dismissal of the indictment against him does not serve to demonstrate that he is innocent; it merely indicates that, without the testimony of the complaining witness, the People are unable to establish his guilt (*Kalra v Kalra*, 149 AD2d 409, 410; *Matter of Perry v Blair*, 64 AD2d 870, 871; *see also, Moses v State of New York*, 137 Misc 2d 1081). Third, his guilty plea was merely part of a strategy to delay trial (Court of Claims Act § 8-b [4] [b]). Finally, ineffective assistance of counsel is not a basis for recovery under the statute (Court of Claims Act § 8-b [3] [b] [ii]).

From the record before this Court, it is clear that claimant's chosen strategy of delay, distort and disrupt, and not any pressure applied by Supreme Court or counsel, culminated in the entry of his guilty plea.

Accordingly, the order of the Court of Claims of the State of New York, County of New York (Alan Marin, J.), entered August 12, 1998, which denied defendant's motion to dismiss the claim and which granted so much of claimant's cross motion for summary judgment as sought leave to amend his claim, should be reversed, on the law and the facts, without costs, and the claim dismissed.

ROSENBERGER, J. P. (concurring). I concur in the result. However, since I cannot accept the majority's recital of the facts, nor the conclusions drawn from them, I must write separately. None but a brief summary of the facts is needed.

Britt was charged with first-degree rape based on a sexual encounter which he described as consensual. He was incarcerated from the time of his arrest. He pleaded guilty to attempted first-degree rape with an agreed sentence of 4 to 8 years. His motion to withdraw his plea was denied.

On his initial appeal, Britt claimed that his plea was involuntary due to coercion by counsel and by the Trial Judge. The latter had warned Britt that unless he accepted the plea offer and spared the complainant the trauma of testifying, the Judge would impose close to the maximum sentence. This Court held the appeal in abeyance and remanded for an evidentiary hear-

ing to clarify, *inter alia*, "the facts concerning the 'pressure' allegedly imposed upon the defendant" (*People v Britt*, 200 AD2d 401, 403).

The same Judge who took the plea allocution presided over the hearing on remand, having denied Britt's recusal motion. On September 30, 1994, the court granted Britt's motion to withdraw his plea and vacated the conviction, on the stated grounds of defense counsel's misconduct. No mention was made of Britt's complaints about the Judge's own behavior, nor were findings made as to several other issues which this Court directed to be included in the hearing. Since the complainant was unwilling to testify, the charges were dismissed.

Britt then brought this action seeking damages from the State for his wrongful incarceration from March 10, 1992 to December 27, 1994. The State moved for summary judgment, arguing that Britt's conviction was not vacated based on any of the grounds specified in Court of Claims Act § 8-b (3) as prerequisites for relief. Misconduct by defense counsel is not included in the enumerated grounds, but misconduct by the court is included (*see*, Court of Claims Act § 8-b [3] [b] [ii] [A]).

The State also contended that Britt had not satisfied section 8-b (4). This section requires a claimant to show a likelihood of success at trial in proving that he was innocent (Court of Claims Act § 8-b [4] [a]) and that he did not bring about his own conviction (Court of Claims Act § 8-b [4] [b]). The motion to dismiss was denied.

The action should have been dismissed because Britt could not show the required likelihood of success. It is unlikely that he would be able to prove his innocence by "clear and convincing evidence", as required by section 8-b (5) (*Forest v State of New York*, 150 AD2d 214, *lv denied* 74 NY2d 610). Unlike a party opposing an ordinary motion to dismiss, who need only show a prima facie case (CPLR 3211), or one opposing a motion for summary judgment, which requires the movant to show the absence of a material issue of fact (CPLR 3212), a claimant under the Court of Claims Act faces a heavier burden, consistent with the legislative intent that recovery should be limited to those rare cases where an innocent person is unjustly convicted (*see, Reed v State of New York*, 78 NY2d 1, 11-12). While Britt may well have prevailed absent the strictures of Court of Claims Act § 8-b (4), he cannot prevail here.

Here, the claimant's case turns entirely on credibility. Since he concedes that intercourse occurred, the only issue is whether the complainant consented. However, if the action went to

trial, the Court of Claims would be unable to test his credibility against that of the alleged victim, who is unavailable to testify. Britt's considerable history of convictions would have a negative impact on his credibility. Conclusory allegations of innocence are insufficient (*Fudger v State of New York*, 131 AD2d 136, *lv denied* 70 NY2d 616), as the presumption of innocence does not apply in a section 8-b action (*Reed v State of New York, supra*, at 8).

In light of the foregoing, we need not decide whether this Court should look behind the stated grounds for vacatur and search the record to discern if the conviction could also have been vacated based on another rationale that satisfies section 8-b (3) (*compare, Lluveras v State of New York*, 136 Misc 2d 171, 173, n. 3 [declining to reinterpret vacatur opinion], *with Coakley v State of New York*, 150 Misc 2d 903, 909, *affd* 225 AD2d 477 [opposite conclusion]). Such scrutiny of the record would otherwise seem appropriate where, as here, the Judge writing the vacatur opinion would naturally be inclined to emphasize a rationale that did not reflect poorly on his own conduct.

SAXE and BUCKLEY, JJ., concur with RUBIN, J.; ROSENBERGER. J. P., and MAZZARELLI, J., concur in a separate opinion by ROSENBERGER, J. P.

Order, Court of Claims, New York County, entered August 12, 1998, reversed, on the law and the facts, without costs, defendant's motion to dismiss the claim granted and the claim dismissed.