OPINION OF THE COURT
Robert J. Collini, J.
The defendant was charged with attempted aggravated murder (Penal Law §§ 110.00, 125.26), attempted murder in the second degree (Penal Law §§ 110.00, 125.25), attempted aggravated assault upon a police officer (Penal Law §§ 110.00, 120.11), attempted assault in the first degree (Penal Law §§ 110.00, 120.10), menacing of a police officer (Penal Law § 120.18), and criminal possession of a weapon in the second (Penal Law § 265.03) and third degrees (Penal Law § 265.02), for conduct allegedly committed on February 24, 2006, in Kings County.
The top count of the indictment was the attempted aggravated murder charge, under a new statute in effect as of December 21, 2005. At the pretrial conference, the parties did not address how many peremptory challenges each side was entitled to exercise and the defendant’s maximum liability, should he be convicted of the top count.
At issue herein is whether the court erred in granting the parties’ 15 peremptory challenges (CPL 270.25 [2] [b]) and whether the court properly explained the defendant’s potential liability in the event he was ultimately convicted.[1]
In response to the terrorist attacks of September 11, 2001, effective December 21, 2005, the New York State Legislature, in an extraordinary session, enacted the Crimes Against Police Act.[2] The act (L 2005, ch 765, as amended) supplemented the Penal and Criminal Procedure Laws by establishing the crimes *427 of menacing of a police officer (Penal Law § 120.18), aggravated assault upon a police officer (Penal Law § 120.11), aggravated criminally negligent homicide (Penal Law § 125.11), aggravated manslaughter in the first degree (Penal Law § 125.22), aggravated manslaughter in the second degree (Penal Law § 125.21) and aggravated murder (Penal Law § 125.26), and increased the minimum sentences of imprisonment for certain offenses involving the assault of police officers.
Pursuant to newly enacted Penal Law § 125.26, the crime of aggravated murder upon a police officer is, without question, a class A-I felony. The defendant herein was charged with attempted aggravated murder, under Penal Law §§ 110.00 and 125.26. At issue was whether the attempted crime remained an A-I felony, or whether it was reduced to a class B felony.[3]
Penal Law § 110.05 (3) states that with certain specified exceptions, set forth in Penal Law § 110.05 (1), an attempt to commit a class A-I felony results in a class B felony. At the time of the defendant’s indictment, on March 10, 2006, the newly enacted crime of aggravated murder had not been included in the exceptions contained within Penal Law § 110.05 (1). Since it was not among the exceptions that remained a class A-I felony, the attempted aggravated murder charge, by operation of Penal Law § 110.05 (3), became a class B felony. However, effective June 7, 2006, the crime of aggravated murder was added to the list of exceptions contained in Penal Law § 110.05 (1) (L 2006, ch 93, § 2). Had the defendant been charged with committing this act on June 7, 2006, or thereafter, the count of attempted aggravated *428 murder would have been a class A-I felony. This statute was not in effect on the day the defendant allegedly committed the crimes for which he was ultimately indicted. Therefore, the completed crime for which the defendant was indicted for attempting to commit (aggravated murder) was not one of the few charges specified in Penal Law § 110.05 (1) that remained a class A-I felony.
Since the defendant was charged with a class B felony, each party was entitled to 15 peremptory challenges (CPL 270.25 [2] [b]). The lawyers did not object to this determination by the court and neither side requested additional peremptory challenges.
The statute had yet to set forth its intended purpose; therefore, the court was correct in proceeding under the theory that the defendant was charged with only a class B felony.
The court was also concerned about the sentencing parameters of the top charge, not only in terms of what to sentence the defendant should he be convicted of the top count, but also to properly inform the defendant of the liability he was facing should he be convicted, in order for the defendant to properly weigh the People’s offer.[4]
While the Legislature set clear guidelines as to the penalties to be imposed on the new crimes that were added under the statute, by failing to include aggravated murder among the list of exceptions contained in Penal Law § 110.05 (1), it failed to specify the terms to be imposed should a defendant be convicted of attempted aggravated murder. In the original legislation, the statute defines the penalties to be imposed as “such minimum period shall be not less than twenty years nor more than forty years” (L 2005, ch 765, § 2).
With this information at hand, and believing the attempted aggravated murder charge to be a class B violent felony, which *429 would not require an indeterminate term of imprisonment concluding with a life sentence, the court informed the defendant that should he be convicted of the top count, he was facing a minimum of 20 and a maximum of 40 years’ imprisonment.[5] The People offered the defendant a plea bargain that would require him to serve only eight years in prison. The defendant refused the People’s offer and proceeded to trial.
As our Court of Appeals has held:
“A trial court has the constitutional duty to ensure that a defendant, before pleading guilty, has a full understanding of what the plea connotes and its consequences. The court is not required to engage in any particular litany when allocuting the defendant, but due process requires that the record must be clear that ‘the plea represents a voluntary and intelligent choice *430 among the alternative courses of action open to the defendant.’ Manifestly, a criminal court is in no position to advise on all the ramifications of a guilty plea personal to a defendant. Accordingly, the courts have drawn a distinction between consequences of which the defendant must be advised, those which are ‘direct’, and those of which the defendant need not be advised, ‘collateral consequences.’ A direct consequence is one which has a definite, immediate and largely automatic effect on defendant’s punishment.” (People v Ford, 86 NY2d 397, 402-403 [1995] [citations omitted].)
Since a potential sentence is a direct consequence of a guilty plea, the court would be required to accurately inform the defendant of the sentence parameters if the defendant had pleaded guilty. Here, however, the defendant did not plead guilty but elected to go to trial.
The court properly advised the defendant of the potential sentence he faced, if convicted under the top count of the indictment. The court was not attempting to coerce a guilty plea from the defendant but was merely advising him of the potential liability in this newly developed area.
“It is not coercive for a court to inform a defendant as to the possible sentence available under the indictment” (People v Stephens, 188 AD2d 345, 345-346 [1992], lv denied 81 NY2d 893 [1993]). “[A] court does not exert undue pressure upon a defendant merely by imparting a reasonable assessment of his sentencing prospects should he be convicted of the offenses charged in the indictment” (Britt v State of New York, 260 AD2d 6, 13 [1999], lv denied 95 NY2d 753 [2000]). “It may be helpful, and not coercive, for a court to inform a defendant about the range of possible sentences he might face if convicted at trial” (People v Sung Min, 249 AD2d 130, 131-132 [1998], citing People v Crafton, 159 AD2d 271, 271 [1990], lv denied 76 NY2d 733 [1990]).
It is clear that the defendant was adequately advised by the court of the potential sentence he was facing should he be convicted after trial. Even if the court inaccurately conveyed the potential sentence he was facing, the defendant’s dialogue with the court made it abundantly clear that he was not impressed with the strength of the People’s case and was not accepting a guilty plea under the terms proposed. Those terms were substantially less than the liability he faced upon conviction under almost any factual scenario.
*431 Accordingly, the court did not err in granting each side 15 peremptory challenges and adequately informed the defendant of the potential liability he was facing prior to proceeding to trial.

. The defendant exercised his right to a jury trial and was found not guilty of attempted aggravated murder and not guilty of attempted murder in the second degree, but guilty of criminal possession of a weapon in the second degree. The jury deadlocked over the charge of attempted aggravated assault upon a police officer.

. “Legislative intent. The tragic events of the September 11, 2001 attack, together with the more recent arrests of members of alleged terrorist cells in Erie county and elsewhere throughout the world, underscore the compelling need for further anti-terrorist measures to enhance public safety. It is our nation’s profound commitment to the principles of democracy and the rule of law that enables us to respond efficiently and effectively to the outrageous criminal acts of terrorists. Creating new criminal offenses and increasing *427 penalties to enhance the powers of law enforcement are necessary to combat their cowardly and inhumane acts of terror . . .
“The images of the savage attack on the World Trade Center and the Pentagon on September 11, 2001 will be forever emblazoned on the psyches of all Americans. The slaughter of innocent civilians, and the sacrifice of selfless police officers, brave firefighters, and other heroic emergency services personnel, will never he forgotten. A crime of unimaginable horror, terrorism tears at the very fabric of our society, threatening to rob us of our commitment to freedom, justice, and democracy. This act protects that commitment by providing law enforcement officials with appropriate and effective tools to investigate, prosecute, and punish terrorists.” (L 2004, ch 1, part A, § 1.)

. Pursuant to Penal Law § 110.05 (3), with certain specified exceptions enumerated in Penal Law § 110.05 (1), an attempt to commit a class A-I felony results in a class B felony.

. The Legislature was clear that if the defendant was convicted of the crime of aggravated murder, a class A-I felony, he would face a sentence of life without parole. For the crimes of aggravated assault upon a police officer and aggravated manslaughter in the first degree, both class B felonies, the minimum determinate term of imprisonment was set at 10 years and the maximum term is 30 years. For the crimes of aggravated manslaughter in the second degree and attempted aggravated assault upon a police officer, both class C felonies, the minimum determinate term is seven years and the maximum term is 20 years. For the crime of aggravated criminally negligent homicide, also a class C felony, the minimum determinate term is 3 Vs years and the maximum term is 20 years. For the crime of menacing a police officer, a class D felony, the minimum determinate term is two years and the maximum term is eight years.

. The entire text of the conversation was as follows:
“The Court: I want to talk about Mr. Banyan’s liability at the end of the case. I know we discussed what the People’s offer was and the Court’s offer. I want to make sure Mr. Banyan is aware of his liability should he be convicted of the top count in this case and the other counts.
“Defense Counsel: I spoke to my client this afternoon. We discussed all the different counts in the indictment. My client is aware that the top charge for the Attempted aggravated murder is a minimum of twenty years, maximum of forty years. He’s aware regarding the C felony for the assault on a police officer. He’s aware that the minimum for that is seven and I believe the maximum is twenty. So he’s aware that there are other B felonies and C felonies that carry a greater penalty than the Attempted murder in the second degree charge which is a five year minimum and a twenty-five year maximum. I discussed the possible disposition of seven or eight years because I spoke to Mr. Lieberman about that possibility and my client’s not interested in a seven or eight year disposition. He wants to go to trial. He’s aware if he gets convicted he faces, at least on the top charge, he faces as a minimum of twenty years in jail.
“The Court: I think it’s better to put it this way: if he gets convicted of the top count, he faces forty years in state prison. He should understand that. There’s a possibility, at this point, were he to assume responsibility for his actions, were he to be guilty, and were he to mitigate that fact, that there’s a possibility of, I believe seven years was mentioned yesterday. If he wanted to take seven years, we’d consider that at this point or I’m sure we could at least talk about it. My understanding, Mr. Banyan, is that you are not interested in that.
“The Defendant: No.
“The Court: Fine. Tomorrow morning.” (Official court transcript, Oct. 12, 2006.)