People v Stephans (2019 NY Slip Op 00473)





People v Stephans


2019 NY Slip Op 00473


Decided on January 23, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 23, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
SANDRA L. SGROI
ROBERT J. MILLER
VALERIE BRATHWAITE NELSON, JJ.


2015-12082
 (Ind. No. 1094/15)

[*1]The People of the State of New York, respondent,
v
Luander Stephans, appellant.


Robert DiDio, Kew Gardens, NY (Danielle Muscatello former of counsel), for appellant.
Richard A. Brown, District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, Merri Turk Lasky, and Kayonia L. Whetstone of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Charles S. Lopestro, J.), rendered November 23, 2015, convicting her of bribery in the third degree and falsely reporting an incident in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Robert A. Schwartz, J.), of that branch of the defendant's omnibus motion which was to suppress her statements to law enforcement officials.
ORDERED that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and a new trial is ordered.
In the early morning hours of October 16, 2014, the defendant's husband went to a police precinct station house in Queens and reported that the defendant had assaulted him. A police officer spoke with the defendant by telephone, asked her to come to the station house, and told her that she would be arrested. The defendant told him that she would come to the station house the next day. Later that morning, Police Officer Raymond Persaud was assigned to the case and spoke with the defendant by telephone. Officer Persaud informed the defendant that he was investigating an allegation made by her husband and that she needed to come to the station house. The defendant and her husband went the station house and met with Officer Persaud. The officer separated the defendant and her husband, and placed the defendant in the squad interview room.
At a suppression hearing, Officer Persaud testified that after interviewing the defendant's husband, he went into the squad interview room, introduced himself to the defendant, and thanked her for coming in. He then told her of the assault allegations against her, that he had learned that her alleged acts would also violate an existing order of protection, and that she would be arrested. The defendant then told Officer Persaud that she and her husband had gotten into an argument and that she did not mean to hit him, but when she swung her hand at his face, her ring might have cut his eye. Officer Persaud testified that although he asked the defendant questions about "personal stuff," such as where she worked and where she was from, he had not questioned the defendant about the alleged assault before she made this incriminating statement.
Officer Persaud further testified that after he and the defendant had conversed for an unspecified time, he told her that she was going to be placed under arrest, and that, as he was about to leave the interview room, the defendant offered him sex and money to "make the charges disappear." According to Officer Persaud, he informed the defendant that he would need to speak to his superior and the assistant district attorney. Officer Persaud reported the incident to his superior. The Internal Affairs Bureau (hereinafter Internal Affairs) was contacted and, approximately two hours later, officers from Internal Affairs came to the station house and placed a recording device on Officer Persaud. Officer Persaud returned to the interview room, where the defendant continued to be detained, and recorded a conversation with her in which she repeated the offer to give him money and sex in exchange for making the charges disappear. One hour later, Officer Persaud returned to the interview room with his sergeant, and the sergeant informed the defendant that she was being charged with bribery. Officer Persaud testified that the defendant appeared surprised, and said that she had not been trying to bribe Officer Persaud, but was "just trying to give him something for his kindness because he was kind to me." At no point during the four hours in which she was interviewed did Officer Persaud, or any other officer, advise the defendant of her Miranda rights (see Miranda v Arizona, 384 US 436).
Shortly after the conversation with Officer Persaud and the sergeant, the defendant was moved to a cell in the station house, and the following day she was arraigned on a felony complaint charging her with bribery of Officer Persaud and various charges relating to the alleged assault of her husband. The defendant was represented by an attorney at arraignment and was released from custody.
A few days later, on October 20, 2014, the defendant called the precinct station house and reported to Detective Oliver Muir that while she was there on October 16, 2014, Officer Persaud "felt her breast, grabbed her private parts and asked her for $2500 in cash." She further reported that since that day, she had received numerous calls from Officer Persaud telling her "not to say anything." The defendant's complaint was referred to Sergeant Latania Keith in Internal Affairs. Sergeant Keith contacted the defendant to set up an interview, and arranged to meet her that evening at a coffee shop. Sergeant Keith and her partner met the defendant, who was alone, at the arranged location and conducted the interview in the back of the police vehicle. They did not administer Miranda warnings, and, without the defendant's knowledge, recorded the interview, which lasted just over an hour. The officers asked the defendant about the events surrounding the alleged assault of her husband and the defendant's interactions with Officer Persaud at the station house. In response to their questions, the defendant described the argument that she had with her husband and how, at the station house, Officer Persaud began flirting with her and eventually told her that he could make the charges go away in exchange for sex and money. The defendant told the officers, among other things, that Officer Persaud had removed her to a room with no cameras, turned the lights off, touched her breasts, and placed his hand inside of her pants.
The defendant subsequently was charged by indictment with criminal contempt in the first degree, assault in the third degree, and harassment in the second degree, in relation to the alleged assault of her husband, bribery in the third degree based upon on her interactions with Officer Persaud at the station house, and falsely reporting an incident in the third degree based upon her later report of Officer Persaud's alleged conduct. Before trial, the People gave notice pursuant to CPL 710.30(1)(a) of their intent to offer at trial the defendant's statement to Officer Persaud that she had not meant to strike her husband, and her statement to Officer Persaud and his sergeant that she was not trying to bribe Persaud, but was only trying to give him something for his kindness. The defendant moved, inter alia, to suppress those statements. At the suppression hearing, the People argued that the subject statements were not the product of a custodial interrogation, but instead were spontaneously offered by the defendant. The motion court agreed, and denied that branch of the defendant's motion which was to suppress those statements.
At trial, in addition to the statements of which the People gave notice pursuant to CPL 710.30(1)(a), Officer Persaud testified to numerous other statements the defendant made while she was in the interview room concerning the incident with her husband and the attempted bribery of Officer Persaud, with no objection from defense counsel. Among other things, Officer Persaud [*2]admitted that during his interview with the defendant, he called the defendant's cell phone from his own so that they would have each other's phone numbers and could communicate later, and that before the officers from Internal Affairs arrived, he moved the defendant to another room where he briefly turned off the lights while they were together. The conversation between Officer Persaud and the defendant which was recorded by the recording device placed on Officer Persaud by the officers from Internal Affairs was played for the jury.
The People also introduced into evidence at trial the unredacted audio recording of the defendant's interview with Sergeant Keith and her partner, initially with the consent of defense counsel. However, while the recording was playing for the jury, the trial court interrupted it and called a sidebar conference outside of the jury's presence. The court observed that the manner in which the officers were questioning the defendant shifted the burden of proof, and the questions posed were improper since, at the time the interview was conducted, the defendant had charges pending against her and was represented by counsel. The court further observed that the facts underlying the charges of bribery in the third degree and falsely reporting an incident in the third degree were "so intertwined that they are one in the same," and that the defendant should not have been questioned in the back of a police vehicle without an attorney present. The court stated that it found the recording "highly prejudicial," and that it was considering declaring a mistrial. Defense counsel then moved for a mistrial on the ground that the recording was prejudicial and deprived the defendant of a fair trial. Ultimately, the court declined to declare a mistrial, but it instructed the jury to disregard everything it had heard on the audio recording. Nonetheless, thereafter, Sergeant Keith testified as to certain statements made by the defendant during the recorded interview, with no objection by the defense.
The defendant testified at trial, inter alia, that Officer Persaud had touched her sexually and made sexually explicit comments. The defendant testified that she was frightened, and tried to get out of the situation by offering to give Officer Persaud money and telling him that they could have sex the following week.
The jury acquitted the defendant of all counts relating to the alleged assault of her husband, but convicted her of bribery in the third degree and falsely reporting an incident in the third degree. The defendant appeals, arguing, among other things, that the Supreme Court erred in denying suppression of certain statements she made at the precinct, the evidence was legally insufficient to establish her guilt of bribery in the third degree, the admission of her statements to Sergeant Keith violated her right to counsel, and she was denied the effective assistance of counsel.
The defendant contends that the Supreme Court erred in denying those branches of her omnibus motion which were to suppress the statement she made to Officer Persaud that she did not mean to hit her husband, but her ring might have cut his eye, and the statement she made to Officer Persaud and his sergeant that she was not trying to bribe Officer Persaud, but was just trying to give him something for his kindness. The defendant asserts that the statements were inadmissible because they were the product of a custodial interrogation and she was not advised of her constitutional rights as required by Miranda v Arizona (384 US 436).
Statements made in response to custodial interrogation are inadmissible in the absence of Miranda warnings (see People v Dunbar, 24 NY3d 304, 314; People v Ferro, 63 NY2d 316, 322; People v Tavares-Nunez, 87 AD3d 1171, 1172). Here, contrary to the People's contention, under the totality of the circumstances, the defendant was in police custody at the time that she made the statements (see People v Yukl, 25 NY2d 585, 589; People v Tavares-Nunez, 87 AD3d at 1172; People v Baggett, 57 AD3d 1093, 1094; People v Payne, 41 AD3d 512, 513; People v Vachet, 5 AD3d 700, 701).
We disagree with the Supreme Court's conclusion that the defendant's inculpatory statement concerning the manner in which she might have hit her husband was admissible because it was spontaneous and not the result of interrogation or its functional equivalent. "[T]he special procedural safeguards outlined in Miranda are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation" (Rhode Island v Innis, [*3]446 US 291, 300). "[T]he term interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect" (id. at 301; see People v Tavares-Nunez, 87 AD3d at 1172). In contrast, "[v]olunteered statements are admissible provided the defendant spoke with genuine spontaneity and not the result of inducement, provocation, encouragement or acquiescence, no matter how subtly employed'" (People v Rivers, 56 NY2d 476, 479, quoting People v Maerling, 46 NY2d 289, 302-303; see Rhode Island v Innis, 446 US at 300; People v Tavares-Nunez, 87 AD3d at 1172). Here, considering the totality of the circumstances leading up to the subject statement, it cannot be said that the defendant's statement was genuinely spontaneous and not the result of provocation. Officer Persaud should have known that in telling the defendant that she needed to come to the precinct station house in connection with his investigation into the allegations her husband had made against her, allegations about which she had already been told she would be arrested, placing her in an interview room, and then confronting her with the allegations and the evidence against her, including the existence of the order of protection, he was reasonably likely to elicit from the defendant an incriminating response (see People v Ferro, 63 NY2d at 323; People v Tavares-Nunez, 87 AD3d at 1173). Accordingly, the court should have granted that branch of the defendant's omnibus motion which was to suppress her statement to Officer Persaud concerning the manner in which she may have hit her husband. Nonetheless, because the jury acquitted the defendant of the charges relating to the alleged assault, the error was not prejudicial and, standing alone, would not warrant reversal.
We agree with the Supreme Court's denial of that branch of the defendant's omnibus motion which was to suppress her statement that she was not trying to bribe Officer Persaud, but was only trying to give him something for his kindness. This statement, made several hours after the interview with Officer Persaud, and in response to a statement by the sergeant, was spontaneous and not triggered by any police questioning or other conduct which reasonably could have been expected to elicit an incriminating response (cf. People v Rivers, 56 NY2d 476, 480; People v Whaul, 63 AD3d 1182, 1183; People v Davis, 32 AD3d 445, 446; People v Brown, 161 AD2d 778).
Next, the defendant contends that the evidence was legally insufficient to establish her guilt of bribery in the third degree. Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish beyond a reasonable doubt that the defendant was guilty of bribery in the third degree (Penal Law § 200.00).
We agree with the defendant, however, that reversal is warranted based on the admission of her statements to Sergeant Keith and her partner made in the back of their police vehicle. Contrary to the People's contention, the defendant's objection to the admission of the audio recording of those statements is preserved for appellate review. Although defense counsel initially agreed to the admission of the audio recording, when the trial court stopped the playback before the jury and determined that it was inadmissible, the court specifically recognized the violation of the defendant's right to counsel, and stated that it was considering declaring a mistrial. Defense counsel then moved for a mistrial on the grounds that the audio recording was prejudicial and its playback before the jury deprived the defendant of a fair trial. The court held that admission of the audio recording violated a number of the defendant's constitutional rights, and it noted that defense counsel's failure to initially object to its admission was not determinative of the court's "obligation to conduct a fair trial in this matter." After ultimately denying the motion for a mistrial, and instructing the jury to disregard everything it had heard on the audio recording, the court expressly stated that the admission of the audio recording "for whatever Appellate purpose it's preserved for the appeal." The record thus establishes that the trial court considered the very issues raised on appeal concerning the playback of the audio recording, including the defendant's argument that the court should have granted her motion for a mistrial in order to remedy the prejudice resulting from the jury hearing the recording (see CPL 470.05[2]; People v Dubarry, 25 NY3d 161, 169-170). However, the defendant did not object to the testimony of Sergeant Keith, in which she recounted portions of that same interview. Thus, the defendant's argument on appeal is only partially preserved. Nonetheless, we exercise our interest of justice jurisdiction to reach the merits of the [*4]whole of her argument (see CPL 470.15[6][a]).
"It has long been the law in this State that any incriminating statement made in the absence of counsel by a defendant in response to interrogation relating to the criminal charge under investigation after he [or she] has been arraigned or indicted is inadmissible in evidence against the defendant" (People v Townes, 41 NY2d 97, 102-103). Any interrogation after formal criminal proceedings against a defendant have commenced would violate the defendant's right to counsel and right to be free from testimonial compulsion (see People v Lopez, 16 NY3d 375, 380; People v Townes, 41 NY2d at 103; People v Waterman, 9 NY2d 561, 566). This includes statements made in the course of an interview concerning a defendant's complaint with respect to allegedly illegal police conduct in connection with the defendant's arrest (see People v Roberson, 41 NY2d 106, 108-109; People v Townes, 41 NY2d at 104). The officers investigating such a complaint are free to interview the defendant and make use of the product of that interview in connection with any inquiry into the allegations of police misconduct, but the People are prohibited from using inculpatory statements so elicited in the prosecution of the criminal charges against the defendant (see People v Townes, 41 NY2d at 105).
Here, the officers from Internal Affairs questioned the defendant about the events surrounding the very charges that were the subject of the criminal proceedings then pending against her. Furthermore, to the extent that the People contend that those officers were questioning the defendant about a separate crime for which she was not represented by counsel, that is, falsely reporting an incident in the third degree, their contention is unavailing. Although generally a defendant who is represented by counsel may be questioned about a different, unrepresented crime (see People v Henry, 31 NY3d 364; People v Taylor, 27 NY2d 327, 329), "there are two categories of cases in which police questioning on an unrepresented crime may violate a defendant's right to counsel: (1) where the two matters are so closely related transactionally, or in space or time, that questioning on the unrepresented matter would all but inevitably elicit incriminating responses regarding the matter in which there had been an entry of counsel'; and (2) where, although the matters are less intimately connected. . . the police [are] aware that the defendant was actually represented by an attorney in one of the matters,' and the interrogation actually entail[s] an infringement of the suspect's State constitutional right to counsel by impermissible questioning on the represented crime'" (People v Henry, 31 NY3d at 368 [citation omitted], quoting People v Cohen, 90 NY2d at 638, 640). Here, the defendant's alleged bribery of Officer Persaud and her allegedly false reporting of his sexual misconduct during that same encounter were "so inextricably interwoven in terms of both their temporal proximity and factual interrelationship" as to render unavoidable the conclusion that any interrogation concerning the allegedly false report would inevitably elicit incriminating responses regarding the matter in which there had been an entry of counsel (People v Townes, 41 NY at 104; see People v Carl, 46 NY2d 806, 807-808; People v Roberson, 41 NY2d at 108-109; People v Vega, 81 AD2d 701, 702). Furthermore, the police were aware that the defendant was actually represented by an attorney and the interrogation actually entailed an infringement of her constitutional right to counsel by impermissible questioning on the represented crimes (see People v Cohen, 90 NY2d at 638-642). Accordingly, the People should not have been permitted to introduce any of the defendant's statements that were elicited during that interview, including through the testimony of Sergeant Keith. This error cannot be considered harmless beyond a reasonable doubt as to the defendant's convictions of bribery in the third degree and falsely reporting an incident in the third degree (cf. People v Crimmins, 36 NY2d 230, 237), and thus a new trial is warranted.
We also agree with the defendant that a new trial is warranted on the ground that the defendant was deprived of the effective assistance of counsel. The defendant has demonstrated that trial counsel failed to provide meaningful representation (see People v Baldi, 54 NY2d 137, 147). Specifically, the defendant demonstrated the absence of "a reasonable and legitimate strategy under the circumstances and evidence presented" (People v Benevento, 91 NY2d 708, 713) for defense counsel's stipulation to admission of a recording of the entire interview between the defendant and Sergeant Klein and her partner, and his failure to object to Sergeant Klein's testimony recounting the same interview, or Officer Persaud's testimony in which he recounted numerous statements made by the defendant, of which the People failed to provide notice as required by CPL 710.30(1)(a). We [*5]disagree with our dissenting colleague's conclusion that there was an obvious and legitimate trial strategy in admitting this evidence. The admission of this evidence cannot be viewed as a strategy intended to place the defendant's version of events before the jury without having the defendant testify, since the defendant testified herself at trial as to her version of what occurred with Officer Persaud, and there is no indication in the record that the decision for the defendant to testify was a last-minute change in strategy. Moreover, defense counsel himself effectively acknowledged the absence of any legitimate strategy in admitting this evidence when he moved for a mistrial based upon the admission of the audio recording. Under the circumstances, counsel's errors deprived the defendant of meaningful representation and a fair trial (see People v Cleophus, 81 AD3d 844, 846; People v Danraj, 75 AD3d 651, 651-652).
In light of our determination, we do not reach the defendant's remaining contentions.
SGROI, MILLER and BRATHWAITE NELSON, JJ., concur.
DILLON, J.P., dissents, and votes to affirm the judgment, with the following memorandum:
At trial, the People and the defendant stipulated to admit into evidence a copy of an audio recording of the defendant's interview with officers from the Internal Affairs Bureau regarding her allegations of sexual misconduct by Officer Persaud. A portion of the recording was played to the jury before the Supreme Court stopped the playback of the recording on the ground that the manner in which the officers were questioning the defendant shifted the burden of proof. The court struck the entire recording from evidence and issued a curative instruction to the jury. On appeal, the defendant challenges the admission of the recording into evidence in the first instance. However, defense counsel stated on the record that the recording was "also part of the defense." Thus, the defendant, by failing to object at trial to admission of the recording into evidence and, in fact, consenting to its admission cannot now raise this objection on appeal as it is unpreserved for appellate review (see People v Mancusi, 161 AD3d 775; People v Gajadhar, 38 AD3d 127, 132-133, affd 9 NY3d 438). Further, the defendant's argument on appeal that the court should have ordered a mistrial is based on grounds different than the grounds she advanced at trial, and is therefore unpreserved for appellate review (see CPL 470.05[2]; People v Dunn, 85 NY2d 956, 957). In any event, the court providently exercised its discretion in denying the defendant's request for a mistrial, and instead striking the evidence and issuing a curative instruction (see People v Ortiz, 54 NY2d 288, 292; Hall v Potoker, 49 NY2d 501; People v Richardson, 175 AD2d 143, 144). The jury is presumed to have followed the curative instructions (see People v Hall, 266 AD2d 160, 161; People v Coursey, 250 AD2d 351).
The defendant's argument that her trial counsel was ineffective because he stipulated to admitting into evidence the audio recording of the defendant's interview with Sergeant Keith and her partner is unavailing. The defendant's statements on the recording set forth her version of her interaction with Officer Persaud. Thus, defense counsel's decision to stipulate to the admission of the recording into evidence demonstrated an obvious and legitimate trial strategy (see People v Benevenuto, 91 NY2d 708, 711). The obvious trial strategy by counsel was to allow the jury to hear the defendant refute in her own words the allegations of bribery, without being subjected to any cross examination. Playing the recording for the jury, had the Supreme Court not stricken it sua sponte, might have obviated the need for the defendant to testify in her defense, which is a well-considered and sometimes complicated decision made by defendants and their counsel during jury trials.
I concur with my colleagues as to the remaining issues presented on appeal.
ENTER:
Aprilanne Agostino
Clerk of the Court